**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| CHARLES N. BROCKWAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 09-2605-JWL |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a partially favorable decision of the Commissioner of Social Security (hereinafter Commissioner) granting disability insurance benefits (DIB) under sections 216(i), and 223 of the Social Security Act, 42 U.S.C. §§ 416(i), and 423 (hereinafter the Act) beginning May 18, 2008, but at no earlier time. Finding error in the administrative law judge's (ALJ's) determination of the onset date of disability, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.      Background**

Plaintiff applied for DIB on February 2, 2005 alleging disability since October 11, 2004. (R. 16, 75-77). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an ALJ. (R. 16, 27-29, 30-33, 35-38, 43). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Jack D. McCarthy on April 17, 2008. (R. 16, 52-60, 567). At the hearing, testimony was taken from Plaintiff, from a vocational expert, and from Plaintiff's father. (R. 16, 567-602). An interpreter for the hearing impaired also appeared, but the ALJ found that her services were not necessary at the hearing. (R. 16).

After the hearing, Plaintiff submitted additional medical evidence; and the ALJ ordered consultative examinations from an audiologist, Ms. Ring, and from a neurologist, Dr. Sand. (R. 489-565). On August 6, 2008, Dr. Sand examined Plaintiff and submitted a report of that examination accompanied by a Medical Source Statement providing his opinion regarding Plaintiff's limitations in capacity for work. (R. 554-65). In response to the report of Dr. Sand's examination, Plaintiff submitted a letter dated August 18, 2008 from his treating neurologist, Dr. Kaplan, which reinforced opinions Dr. Kaplan had provided on July 19, 2007, and commented on portions of Dr. Sand's report. (R. 155-56, 566); see also (R. 200-207) (Dr. Kaplan's opinions dated July 19, 2007). On October 1, 2008, the ALJ issued a partially favorable decision, finding that although Plaintiff was not disabled from October 11, 2004 through May 17, 2008, he became disabled within the meaning of the Act beginning May 18, 2008. (R. 13-26). Specifically, the ALJ determined that before May 18, 2008 Plaintiff had the residual functional capacity (RFC)

for a range of light work, and although he was unable to perform his past relevant work, there were a significant number of jobs in the economy which Plaintiff could perform during that time. (R. 19-22, 24-25). Relying upon Dr. Sand's opinion, upon an opinion dated June 16, 2008 from Plaintiff's primary care physician, Dr. Matthews, and upon Dr. Kaplan's letter dated August 18, 2008, the ALJ determined that "beginning on May 18, 2008, [Plaintiff] has not had the residual functional capacity to work 40 hours per week on a regular and continuing basis." (R. 23-24). Therefore, the ALJ determined Plaintiff "has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on May 18, 2008, but not prior thereto," and the Social Security Administration awarded DIB accordingly. (R. 26).

Plaintiff sought Appeals Council review of the ALJ's decision (R. 11-12), but the Council found no reason to review the decision, and Plaintiff's request was denied. (R. 6-8). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)). Section 405(g) of the Act provides that, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied

3

the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and

4

work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2008); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Id. (quoting Lax, 489 F.3d at 1084.)

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at

5

751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## III. Analysis

Plaintiff claims numerous errors in the ALJ's decision. In a single section of his brief titled, "Argument," Plaintiff claims the ALJ improperly evaluated and ultimately disregarded the treating source opinions of Dr. Kaplan and Dr. Matthews; arbitrarily determined Dr. Sand's opinion only related back three months; wrongly failed to recontact Dr. Kaplan and Dr. Matthews; improperly "picked and chose" among the record evidence; improperly discredited Plaintiff's allegations of symptoms resulting from his impairments; presented a hypothetical question to the vocational expert (VE) which did not precisely match the limitations assessed; did not consider all of Plaintiff's impairments and limitations in determining the severity of Plaintiff's impairments or in assessing RFC; failed to follow the requirements of Social Security Ruling (SSR) 00-4p to identify and resolve conflicts between the VE testimony and the Dictionary of Occupational Titles (DOT); and failed to properly evaluate whether Plaintiff's condition meets or equals the criteria of Listing 11.07(C) or (D). (Pl. Br. 20-32). The Commissioner's brief opposes each of Plaintiff's arguments in four parts in which he argues that the ALJ: (B) properly found Plaintiff's impairments did not meet or equal the severity of a listed impairment; (C) properly evaluated the credibility of Plaintiff's allegations of symptoms; (D) properly analyzed and weighed the medical opinions; and (E) properly assessed Plaintiff's RFC and relied upon the VE testimony. (Comm'r Br.

6

13-26). In a reply brief longer than the "Argument" section of his initial brief, Plaintiff counters each of the arguments presented by the Commissioner, and explains how the record evidence better supports his view than that of the Commissioner. (Reply 1-23).

Although Plaintiff uses a shotgun approach in his attempt to show as many errors as possible in the decision at issue, the real import of all of his arguments is that the ALJ erred in determining the onset date of disability in this case. In his brief, Plaintiff argued: "The ALJ's decision that plaintiff was not disabled prior to May 18, 2008 was arbitrary and capricious, at best, and is not supported by substantial evidence in the record as a whole." (Pl. Br. 20) (emphasis in Pl. Br.). "The ALJ did not cite any evidence to support his conclusion that the diagnoses and resulting limitations identified by Dr. Sand in August 2008 did not exist prior to May 18, 2008, . . . and arbitrarily found that the limitations identified by Dr. Sand existed only three months prior to Dr. Sand's consultative examination." Id. at 21 (emphasis in Pl. Br.). "[T]he evidence relied on by the ALJ does not show that plaintiff was able to perform substantial gainful activity (SGA) prior to May 18, 2008." Id. at 24. "[T]he ALJ cited no credible basis for finding that the limitations identified by Dr. Sand did not exist from October, 2004 through May 18, 2008." Id. at 27.

Plaintiff continued the same theme in his Reply Brief: "Contrary to the Commissioner's assertions, both the MSS [(Medical Source Statement)] completed by Dr. Kaplan [on July 19, 2007] and the MSS completed by Dr. Matthews [on June 16, 2008] pertain to the period from October 11, 2004 through May 18, 2008." (Reply 4) (emphasis

7

in Reply). "The only difference in the record before and after May 18, 2008, is that the ALJ purchased a CE [(consultative examination)] after that date. The ALJ failed to articulate any valid reason for accepting the limitations found by the consultative physician and rejecting the same limitations when identified by the treating physicians to be in existence prior to May 2008." Id. at 6.

> Again, the fact that Plaintiff's impairments were responsive to Botox injections does not provide a basis for rejecting plaintiff's credibility and claim prior to May 2008. Indeed, there is no evidence that these impairments quit responding to Botox injections after May 2008. Likewise, there is no evidence that Plaintiff had positive MRI and EMG findings or nerve root impingement after May 2008. Thus, these proffered reasons are insufficient for rejecting plaintiff's credibility prior to May 2008.

Id. at 18-19 (emphases in Reply) (citations omitted). "[T]he ALJ cited no evidence to support a determination that the limitations identified by Dr. Sand did not exist prior to May 18, 2008." Id. at 24 (emphasis in Reply).

In his decision, the ALJ explained five reasons why he found Plaintiff unable to work forty hours per week on a regular and continuing basis beginning on May 18, 2008: (1) "[B]eginning on May 18, 2008, the claimant's allegations regarding his symptoms and limitations are generally credible," (R. 23); (2) Dr. Sand performed a consultative examination on August 6, 2008 and completed a Medical Source Statement limiting Plaintiff to lift or carry ten pounds occasionally (for up to one-third of a workday), to stand twenty minutes at a time but only one hour in a workday, to walk ten minutes at a time but only thirty minutes in a workday, and to only occasional (one-third of a workday) use of the hands and feet, (R. 23) (citing Ex. 20F (R. 554-65)); (3) Dr. Matthew

8

opined on June 16, 2008 that Plaintiff can sit one hour at a time but only three hours in a workday, can stand and/or walk thirty minutes at a time but less than one hour in a workday, and can only rarely balance or stoop, (R. 23) (citing Ex. 18F (R. 545-49)); (4) Dr. Kaplan opined on August 18, 2008 that Plaintiff can sit fifteen to thirty minutes at a time but only one to three hours in a workday, that he can stand and/or walk fifteen minutes at a time but less than one hour in a workday, that lifting up to ten pounds for even one to three hours in a workday would be quite dangerous because of claimant's ataxia and weak upper extremities, and that Plaintiff cannot use his hands repetitively for even thirty minutes due to upper extremity weakness and spastic gait, (R. 23-24) (citing Ex. 21F (R. 566)); and (5) the limitations assessed by Dr. Sands "could be projected back three months to May 18, 2008." (R. 24).

> The ALJ discussed Plaintiff's allegations of symptoms before May 18, 2008:
>
> The undersigned next evaluates the claimant's credibility for the period from October 11, 2004 to May 18, 2008. The objective evidence does not support a finding of disability for the above period. Several treatment records revealed that the claimant's condition significantly improved on Botox injections. In fact, the claimant was able to walk several miles each day. MRI and EMG studies have revealed mild or negative findings. There has been no nerve root impingement of the claimant's spine. While the claimant does have a hearing impairment, treatment records indicate that amplification would be beneficial.
>
> While the claimant may have limitations, the objective record does not support a finding that he was significantly limited in his ability to perform daily activities during the period from October 11, 2004 to May 18, 2008. Additionally, the claimant has a consistent work record prior to his alleged onset date. However, there is no indication that he attempted job assistance through agencies such as Vocational Rehabilitation.

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms <u>are not credible from October 11, 2004 to May 18, 2008</u>, to the extent they are inconsistent with the residual functional capacity assessment.

(R. 22) (emphasis added).

As Plaintiff points out, most of the reasons given for finding Plaintiff's allegations incredible before May 18, 2008 apply equally to the period after May 18, 2008, and Plaintiff's allegations, testimony, and reports of symptoms were essentially identical for the periods <u>both before and after</u> May 18, 2008. Further, Plaintiff was receiving Botox injections with the same relative success in both periods. MRI and EMG studies have revealed mild or negative finding for both periods. There has been no nerve root impingement in Plaintiff's spine in either period. Plaintiff's hearing impairment has been essentially the same in both periods, and the proper kind of hearing aids would have been beneficial in both periods. Plaintiff has performed essentially the same daily activities, with essentially the same limitations and same degree of success in both periods. Plaintiff made no attempt to get job assistance in either period. Despite the apparent consistency in conditions between the two periods, the ALJ found Plaintiff's allegations not credible as related to the period before May 18, 2008, but credible as related to the period beginning May 18, 2008. Moreover, the decision contains no mention of what is different in Plaintiff's testimony, in Plaintiff's abilities, in the medical records, in the medical

10

opinions, or in the other record evidence on or about May 18, 2008 which supports different credibility findings before and after that date.

In addition to reliance upon his credibility finding, the ALJ stated that Dr. Sand's August 6, 2008 opinion, Dr. Matthews's June 16, 2008 opinion, and Dr. Kaplan's August 18, 2008 opinion "give support to a finding that the claimant was disabled on and after May 18, 2008." (R. 23). Therefore, the ALJ concluded that the most restrictive limitations found in each of these three opinions preclude work for forty hours per week on a regular and continuing basis: (1) Dr. Sands–stand twenty minutes at a time but only one hour in a workday, walk ten minutes at a time but only thirty minutes in a workday, and only occasional use of the hands and feet; (2) Dr. Matthews–sit one hour at a time but only three hours in a workday, stand and/or walk thirty minutes at a time but less than one hour in a workday, and only rarely balance or stoop; and (3) Dr. Kaplan–sit fifteen to thirty minutes at a time but only one to three hours in a workday, stand and/or walk fifteen minutes at a time but less than one hour in a workday, and cannot use his hands repetitively for even thirty minutes.

Dr. Kaplan completed two Medical Source Statements on July 19, 2007 in which the limitations are quite similar to those upon which the ALJ relied to find Plaintiff is unable to work on a regular and continuing basis beginning May 18, 2008. (R. 200-07). Those limitations are: (1) Sit for one hour continuously for a total of one to three hours in a workday, stand or walk thirty minutes continuously for less than one hour total in a workday, and only rarely balance or stoop. (R. 200-03). (2) Sit fifteen to thirty minutes

11

continuously for a total of one to three hours in a workday, stand or walk less than fifteen minutes continuously for less than one hour total in a workday, only rarely balance or stoop, and rarely reach, handle, or finger with either hand. (R. 204-07). Dr. Kaplan stated that the restrictions contained in his opinions had existed and persisted since at least October 1, 2004. (R. 202, 206).

The ALJ considered these opinions and found that "Although there were some differences in the two statements, both revealed Dr. Kaplan's assessment that the claimant was significantly limited in his functional capacity and would be unable to complete an 8-hour workday." (R. 21). He discounted Dr. Kaplan's opinion because (1) it was inconsistent with Dr. Kaplan's treatment notes which indicated that Plaintiff "was improving, doing well and continued to walk a couple of miles every day with no problem," id.; (2) it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques; (3) it is inconsistent with other substantial evidence in the record; and (4) it is on an issue reserved to the Commissioner. (R. 21-22).

The ALJ did not explain how Dr. Kaplan's medical observation that Plaintiff "was improving, doing well and continued to walk a couple of miles every day with no problem" is inconsistent with his opinion that Plaintiff must walk less than fifteen minutes at a time for less than one hour daily, or with his opinion that Plaintiff must only rarely balance, stoop, reach handle, or finger. The ALJ cites to no record evidence tending to show that these facts are incompatible, or that Plaintiff cannot walk a total of two miles each day in several less-than-fifteen-minute increments totaling less than one hour.

12

Contrary to the ALJ's findings, the court has not found other substantial evidence in the record with which Dr. Kaplan's opinions are inconsistent. In his brief, the Commissioner cites to certain evidence which he contends is inconsistent with Dr. Kaplan's 2007 opinions (Comm'r Br. 21) (citing improved or normal gait and range of motion after Botox injections, and normal strength, and normal motor function), but he does not explain how these findings demonstrate that Plaintiff can walk more than fifteen minutes at a time, can walk an hour or more total in a workday, or preclude or are inconsistent with the limitations opined by Dr. Kaplan.

Most importantly in the context of determining onset of disability, neither the ALJ in the decision, nor the Commissioner in his brief explained and supported with record evidence what changed on or about May 18, 2008, or what was different in Plaintiff's condition before May 18, 2008 from his condition beginning May 18, 2008 which would establish that he was not disabled before that date but became disabled thereafter. Dr. Kaplan's opinions in July 2007 and in August 2008, are quite similar, and any one of them, if accepted, would result in a finding of disability. The ALJ did not explain why Dr. Kaplan's 2008 opinion was worthy of more weight than his 2007 opinions. Moreover, Dr. Kaplan's opinions are all quite similar to the opinion of Dr. Matthews, and Dr. Matthews stated that the limitations contained in his opinion had existed and persisted since at least October 1, 2004. The ALJ did not explain why Dr. Matthews's opinion was worthy of weight as to the period beginning May 18, 2008, but not for the earlier period. Finally, Dr. Kaplan's opinions, and Dr. Matthews's opinion were quite similar to Dr.

13

Sand's opinion, but Dr. Sand did not have sufficient information to form an opinion regarding when the limitations were first present, and did not do so, but both treating physicians did. (R. 564). Therefore, the affirmative medical opinions upon which the ALJ stated he relied to find Plaintiff disabled beginning May 18, 2008 included Dr. Kaplan's and Dr. Matthews's opinions that Plaintiff's limitations had persisted since October 1, 2004. Dr. Sand's opinion does not <u>require</u> a contrary determination.

Although neither Plaintiff nor the Commissioner cites to the standard applicable to a determination of onset date, the Commissioner has provided guidance in that regard. 1983-1991 West's Soc. Sec. Reporting Serv., Rulings 49-58 (1992). In 1983, the Commissioner propounded Social Security Ruling (SSR) 83-20, "Titles II and XVI: Onset of Disability," "To state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act (the Act) and implementing regulations." <u>Id.</u> at 49. Social Security Rulings "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); <u>accord</u>, <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

SSR 83-20 recognizes that determining onset date is critical in many cases, and where the medical evidence does not establish a precise onset date, it will be necessary to infer the onset date from record evidence. 1983-1991 West's Soc. Sec. Reporting Serv., Rulings at 50. It provides guidance for determining onset date in cases such as this,

14

where Plaintiff's disability is of nontraumatic origin or where medical evidence of a precise onset date is not available:

> In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case.

Id. The Ruling notes that the starting point in determining onset is the claimant's alleged onset date, but it requires that "the established onset date must be fixed based on the facts, and can never be inconsistent with the medical evidence of record." Id. at 50-51. It notes that it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling, that in such cases it will be necessary to infer an onset date from record evidence, that listing level severity need not have been reached to establish onset date, and that the ALJ should call on the services of a medical advisor when onset date must be inferred, especially where medical evidence is ambiguous or inconsistent with the claimant's alleged onset date. Id. at 51. The Ruling explains that, "Convincing rationale must be given for the date selected." Id. at 52.

Here, the ALJ did not even acknowledge the issues in determining an onset date, and did not cite to the controlling standard in SSR 83-20. The closest he came to stating a rationale for establishing an onset date was when he stated his finding that Plaintiff's limitations contained in Dr. Sand's report "could be projected back three months to May 18, 2008." (R. 24). However, he stated no rationale or basis in the evidence for this finding. He did not state his evaluation of the relative weight of: Plaintiff's allegations of

15

onset date, Plaintiff's work history, inferences to be drawn from the medical evidence, and the medical opinions regarding onset; or how those factors worked together to lead to an inference for the date of onset. Perhaps most importantly, the ALJ did not call on the services of a medical expert to testify regarding the inferences which might be drawn in the circumstances from the medical evidence and the medical opinion evidence, and he did not explain what precise evidence of onset date was available in the record which would preclude the need to call upon such expert testimony. His conclusory finding that Dr. Sand's opinion regarding Plaintiff's limitations "could be projected back three months," is not a convincing rationale for the date selected. Remand is necessary for the Commissioner to properly determine an onset date in accordance with SSR 83-20.

Plaintiff argues that additional fact-finding would serve no useful purpose and therefore the court should remand for an immediate award of benefits. (Pl. Br. 33); see also (Reply 24-25). The court does not agree. Remand for an immediate award of benefits is not appropriate here.

Whether to remand the case for additional fact-finding or for an immediate award of benefits is within the discretion of the district court. Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993); Taylor v. Callahan, 969 F. Supp. 664, 673 (D. Kan. 1997) (citing Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir. 1987)). In 2006, the Tenth Circuit noted two factors relevant to whether to remand for an immediate award of benefits: Length of time the matter has been pending and "whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would

merely delay the receipt of benefits." Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006)(quoting Harris v. Sec'y of Health & Human Servs., 821 F.2d 541, 545 (10th Cir. 1987); and citing Sisco v. Dep't of Health & Human Servs., 10 F.3d 739, 746 (10th Cir. 1993)).

The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986). Nevertheless, the Commissioner is not entitled to adjudicate a case ad infinitum until he correctly applies the proper legal standard and gathers evidence to support his conclusion. Sisco, 10 F.3d at 746.

Here, the medical evidence is ambiguous regarding the precise date Plaintiff's impairments became disabling. For example, the ALJ found that Dr. Stevko, a state agency physician who reviewed the record evidence on August 10, 2005, opined Plaintiff could perform a range of medium work. (R. 22) (citing Ex. 9F (R. 192-99)). Therefore, it appears to the court that an onset date must be inferred from the evidence. That is a medical determination for which the court is not qualified and for which the services of a medical advisor will likely be necessary. Therefore, the court is unable to determine onset date or to remand for an immediate award of benefits. Determination of onset date must be made by the Commissioner on remand, likely utilizing the services of a medical advisor.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 17th day of February 2011, at Kansas City, Kansas.

s:/   John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**